**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000941**
**30-SEP-2019**
**07:50 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

JOHN J. ANDRADE, IV, Plaintiff-Appellant,
v.
COUNTY OF HAWAIʻI, Defendant-Appellee,
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10;
ROE "NON-PROFIT" CORPORATIONS 1-10; AND ROE GOVERNMENTAL ENTITIES
1-10

NO. CAAP-15-0000941

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 15-1-152K)

SEPTEMBER 30, 2019

GINOZA, CHIEF JUDGE, FUJISE AND HIRAOKA, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

Plaintiff-Appellant John J. Andrade, IV (**Andrade**)
appeals from the Final Judgment (**Judgment**) in favor of Defendant-
Appellee County of Hawaiʻi (**County**) entered by the Circuit Court
of the Third Circuit (**Circuit Court**)[1] on November 19, 2015. The
Circuit Court granted the County's motion to dismiss Andrade's

_____

[1]    The Honorable Melvin H. Fujino presided.

complaint. Andrade contends that the Circuit Court erred by ruling that: (1) his rights under the County's rules for internal complaint procedures were not liberty or property interests under article I, section 5 of the Hawai'i Constitution; (2) his whistleblower claim was time-barred; (3) he failed to exhaust his administrative remedies by not pursuing his claim for retaliation with the Hawai'i Civil Rights Commission (**HCRC**); (4) his negligence claims were barred by the exclusive remedy provisions of the Hawai'i Workers' Compensation Law; and (5) he had no claim for wilful and wanton conduct. For the reasons explained below, we vacate the Judgment as to Counts I and II of the complaint, affirm the Judgment as to Counts III, IV, V, VI, and VII of the complaint, and remand for further proceedings consistent with this opinion.

**I.**

Andrade is a County employee. He sued the County for relief related to his employment. The County moved to dismiss the complaint pursuant to Hawai'i Rules of Civil Procedure (**HRCP**) Rule 12(b)(6) (eff. 2000).[2] Andrade's memorandum in opposition included a nineteen-page declaration signed by Andrade, but did not include a cross-motion for summary judgment. The County did not object to Andrade's declaration or to the testimony it proffered. The County did not submit declarations or any other evidence with its reply memorandum. The transcript of the hearing on the County's motion does not show that the Circuit Court excluded any of Andrade's evidence. The order granting the County's motion does not state that matters outside the pleadings

---

[2] HRCP Rule 12 provides, in relevant part:

> (b)  How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

were excluded.[3]   Under such circumstances HRCP Rule 12(b)
provides, in relevant part:

> If, on a motion asserting the defense numbered (6) to
> dismiss for failure of the pleading to state a claim upon
> which relief can be granted, matters outside the pleading
> are presented to and not excluded by the court, the motion
> shall be treated as one for summary judgment and disposed of
> as provided in Rule 56, and all parties shall be given
> reasonable opportunity to present all material made
> pertinent to such a motion by Rule 56.

Accordingly, we apply the standard of review applicable to a
motion for summary judgment under HRCP Rule 56 (eff. 2000).

The grant or denial of summary judgment is reviewed de
novo.  Ralston v. Yim, 129 Hawai'i 46, 55, 292 P.3d 1276, 1285
(2013).

> Summary judgment is appropriate if the pleadings,
> depositions, answers to interrogatories and admissions on
> file, together with the affidavits, if any, show that there
> is no genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter of law.  A
> fact is material if proof of that fact would have the effect
> of establishing or refuting one of the essential elements of
> a cause of action or defense asserted by the parties.  The
> evidence must be viewed in the light most favorable to the
> non-moving party.  In other words, we must view all of the
> evidence and inferences drawn therefrom in the light most
> favorable to the party opposing the motion.

Id. at 55-56, 292 P.3d at 1285-86 (cleaned up).[4]   Ordinarily on a
motion for summary judgment the moving party has the burden of
either (1) presenting evidence negating an element of the non-

---

[3]    When matters outside the pleadings are presented in connection
with an HRCP 12(b)(6) motion to dismiss, the trial court has discretion to
either exclude the material or to convert the motion to dismiss into a motion
for summary judgment.  See Bellavia Blatt & Crossett, P.C. v. Kel & Partners
LLC, 151 F.Supp.3d 287, 291 (E.D.N.Y. 2015) (applying Federal Rules of Civil
Procedure Rule 12(b)).  The court's discretion generally will be exercised on
the basis of whether or not the proffered material, and the resulting
conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to
facilitate the disposition of the action.  Id. (quoting Carione v. United
States, 368 F.Supp.2d 186, 191 (E.D.N.Y. 2005)).

[4]    The "cleaned up" parenthetical tells readers that extraneous
material (e.g., internal brackets, ellipses, quotation marks, citations, foot-
note reference numbers, and changes in capitalization) was removed from a
quotation for readability, and that none of it mattered for understanding the
quotation or evaluating its weight.  See Metzler, Jack, Cleaning Up
Quotations, 18 J. of App. Prac. & Process 143 (2017).

moving party's claim or affirmative defense, or (2) demonstrating that the non-moving party will be unable to carry its burden of proof at trial. Where the movant attempts to meet its burden through the latter means, the movant must show not only that the non-moving party has not placed proof in the record, but also that the non-moving party will be unable to offer proof at trial; generally, if discovery has not concluded, a summary judgment movant cannot point to the non-moving party's lack of evidence to support its initial burden of production. Ralston, 129 Hawai'i at 60-61, 292 P.3d at 1290-91.

In this case, however, the County did not move for summary judgment[5] and its motion to dismiss required only that the Circuit Court view the facts alleged in the complaint (and the inferences to be drawn therefrom) in the light most favorable to Andrade. Bank of Am., N.A. v. Reyes-Toledo, 143 Hawai'i 249, 257, 428 P.3d 761, 769 (2018). The parties have not cited, nor have we found, any Hawai'i appellate decision describing the parties' respective burdens when a defendant files an HRCP Rule 12(b)(6) motion to dismiss and the plaintiff converts the motion into one for summary judgment by introducing matters outside the pleadings[6] that are not excluded by the trial court.

---

[5] The County's answering brief incorrectly states that the County's motion to dismiss "was brought pursuant to [HRCP Rule] 56, relating to summary judgment." The County's motion cited HRCP Rule 12(b)(6); it did not cite to HRCP Rule 56. The County's motion attached a declaration from one of the County's attorneys submitting two exhibits: a copy of Andrade's Complaint and a copy of an order entered by the circuit court in another lawsuit (without arguing res judicata or collateral estoppel). The County's own declaration and exhibits did not convert its motion to dismiss into a motion for summary judgment because they did not proffer any material evidentiary facts. See Rosa v. CWJ Contractors, Ltd., 4 Haw. App. 210, 215, 664 P.2d 745, 749 (1983) (attaching an affidavit that essentially presented no material facts did not convert a motion to dismiss into a motion for summary judgment).

[6] A party's self-serving statements that otherwise comply with HRCP Rule 56(e) can be utilized in a motion for summary judgment, and need not be corroborated by independent evidence. Nozawa v. Operating Engineers Local Union No. 3, 142 Hawai'i 331, 339, 418 P.3d 1187, 1195 (2018). The court need not, however, accept conclusory allegations concerning the legal effect of the facts the party has alleged or presented. Reyes-Toledo, 143 Hawai'i at 262, 428 P.3d at 774. "[W]hen an assertion in an affidavit expresses an inference without setting forth the underlying facts on which the conclusion is based or
(continued...)

4

In such a situation the moving defendant could argue that (a) the plaintiff's evidence is inadmissible, (b) even if the plaintiff's evidence were admissible, the facts established are not material and the defendant is still entitled to judgment as a matter of law, and/or (c) even if the plaintiff's evidence were admissible and material, the facts are controverted (by a declaration or other evidence submitted with the defendant's reply memorandum). Pursuing option (c) would, of course, result in a denial of the defendant's own motion on the grounds that there were genuine issues of material fact. Accordingly, we hold that when a plaintiff converts a defendant's HRCP Rule 12(b)(6) motion into a HRCP Rule 56 motion for summary judgment by presenting matters outside the pleadings that are not excluded by the trial court, without filing a cross-motion for summary judgment,[7] the court

---

[6]        (...continued)
states a conclusion that is not reasonably drawn from the underlying facts, the assertion is considered conclusory and cannot be utilized in support of or against a motion for summary judgment." Nozawa, 142 Hawai'i at 339, 418 P.3d at 1195 (citations omitted). "On the other hand, an inference within an affidavit that is based on stated facts from which the conclusion may reasonably be drawn is not conclusory and may be used to support or oppose a motion for summary judgment." Id.

[7]        The briefing schedule for a motion is established by the Rules of the Circuit Courts of the State of Hawai'i (**RCCH**). The RCCH do not differentiate between motions and cross-motions. RCCH Rule 7 (eff. 1997) provides, in relevant part:

>        (b) Opposition and reply. An opposing party may serve and file counter affidavits and a memorandum in opposition to the motion, which shall be served and filed not less than 8 days before the date set for the hearing, except as otherwise provided by the [HRCP] or ordered by the Court. The movant may file and serve a reply not less than 3 days before the date set for the hearing.

If the plaintiff, in addition to offering evidence outside the pleadings to oppose a motion to dismiss, filed a cross-motion for summary judgment, the trial court would not have discretion to exclude the plaintiff's material or decline to hear the cross-motion for summary judgment. However, the defendant is then entitled to additional time to file a response to the cross-motion. HRCP Rule 56 provides, in relevant part:

>        (c) Motion and Proceedings Thereon. The [cross-] motion [for summary judgment] shall be filed and served not less than 18 days before the date set for the hearing. The adverse party may file and serve opposing memorandum and/or affidavits not less than 8 days before the date set for the
>                                                        (continued...)

5

should view the facts presented in the pleadings <u>and</u> the evidence submitted by the plaintiff (and the inferences to be drawn there-from) in the light most favorable to the plaintiff. <u>Ralston</u>, 129 Hawai'i at 56, 292 P.3d at 1286. If the court concludes (based on the factual allegations in the complaint and the plaintiff's proffered evidence) that the defendant is entitled to judgment as a matter of law, the court should grant summary judgment in favor of the defendant; if not, the court should deny the defendant's motion;[8] where the plaintiff does not file a cross-motion for summary judgment, the defendant's failure to controvert the plaintiff's evidence (offered in opposition to the motion to dismiss) does not constitute a concession or admission as in <u>Smith v. New England Mut. Life Ins. Co.</u>, 72 Haw. 531, 541, 827 P.2d 635, 640 (1992) (noting that a party cannot "condition an admission of fact only for purpose of its motion for summary judgment") (citation omitted).

---

[7]     (...continued)
        hearing. The [cross-]moving party may file and serve a
        reply or affidavit not less than 3 days before the date set
        for the hearing.

If the trial court desired to convert the original motion to dismiss into a motion for summary judgment and to hear the motion and the cross-motion at the same time, the original hearing date should be continued and consolidated with the hearing date assigned to the cross-motion.

[8]     In a case such as this, where the plaintiff presents evidence outside the pleadings but does <u>not</u> file a cross-motion for summary judgment, it would not be appropriate for a trial court to <u>sua sponte</u> enter summary judgment in the plaintiff's favor even if the defendant did not raise a genuine issue of material fact. The Hawai'i cases that hold it appropriate for a court to <u>sua sponte</u> enter summary judgment in favor of the non-moving party all deal with the disposition of a motion for summary judgment, not a motion to dismiss that was converted into one for summary judgment by the non-moving party. <u>See</u> <u>Flint v. MacKenzie</u>, 53 Haw. 672, 672-73, 501 P.2d 357, 357-58 (1972); <u>First Ins. Co. of Hawaii v. State</u>, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983); <u>Butler v. Obayashi</u>, 71 Haw. 175, 176, 785 P.2d 1324, 1325 (1990); <u>Konno v. County of Hawai'i</u>, 85 Hawai'i 61, 76, 937 P.2d 397, 412 (1997); <u>Estate of Doe v. Paul Revere Ins. Grp.</u>, 86 Hawai'i 262, 270, 948 P.2d 1103, 1111 (1997); <u>State ex rel. Anzai v. City & Cty. of Honolulu</u>, 99 Hawai'i 508, 514, 57 P.3d 433, 439 (2002); <u>University of Haw. v. City & Cty. of Honolulu</u>, 102 Hawai'i 440, 443, 77 P.3d 478, 481 (2003); <u>Cordeiro v. Burns</u>, 7 Haw. App. 463, 471, 776 P.2d 411, 417 (1989); <u>Dairy Rd. Partners v. Island Ins. Co.</u>, 92 Hawai'i 398, 425, 992 P.2d 93, 120 (2000).

## II.

Andrade's complaint and uncontroverted declaration made the following allegations which, for purposes of this appeal only, we deem to be true:

Andrade has been employed by the County's Department of Environmental Management (**Department**) as an Equipment Operator III (**EO3**) since November 13, 2006. He lives in Honoka'a and is assigned to the Kealakehe baseyard. The commute[9] is a hardship to him due to the cost, time, and not being able to assist in the care of his children. On July 29, 2007, he requested a transfer to the Waimea baseyard, which is closer to Honoka'a. The Department did not respond to his request.

On November 9, 2009, Andrade applied for an EO3 Sewer Maintenance Repairer position. On December 30, 2009, he was informed by the Department's human resources program specialist Margaret Almada (**Almada**) that he had not been selected for the position. On December 13, 2010, he was informed by Almada that he had also not been selected for any of the EO3 vacancies in Hilo, Kona, or Pu'uanahulu. On May 12, 2011, he wrote to the Department expressing the hardship he and his family were experiencing because he was not able to transfer to the Waimea baseyard. On May 24, 2011, he was informed that the Department rejected his transfer request based on personal hardship. He was instructed to apply for a transfer only during periods of recruitment for a vacant position.

On December 6, 2011, Andrade sent the Department another letter expressing interest in a lateral transfer to the Waimea baseyard due to personal hardship; on December 16, 2011, Almada instructed him to apply when recruitment to fill the EO3 position in Waimea was announced. The vacancy was announced on March 7, 2012. Andrade submitted a timely application. On

---

[9] We take judicial notice pursuant to Rule 201(c), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes (2016) (**HRE**) that the driving distance between Honoka'a and Kealekehe is approximately 54 to 57 miles, depending upon the route taken.

April 2, 2012, Almada informed Andrade that candidates for the position would be interviewed and the top three candidates would have to take a driving test. On April 23, 2012, Andrade was notified that his driving test would be conducted on May 9, 2012, at the Pu'uanahulu Landfill and on May 10, 2012, at the Waimea baseyard. The notice stated, "Once we have tabulated your interview and driving test scores we will begin to perform the background check on the top candidate." On May 15, 2012, Andrade was required to take a third driving test, even though Almada was unaware of it and questioned why it was necessary.

On June 18, 2012, Andrade was attending a safety meeting in Hilo when he learned that another person had been selected for the Waimea baseyard EO3 position. On July 20, 2012, that person was observed to be unable to competently operate an end-dumpster truck, which was a basic EO3-level task.

On July 20, 2012, Andrade asked Almada why he had not been informed that the EO3 position in Waimea had been filled; he was concerned that the time for him to file an internal complaint may have expired. Almada was not able to give him a satisfactory response but on July 24, 2012, Andrade received written notice that he had not been selected to fill the Waimea baseyard EO3 position.

On August 1, 2012, Andrade asked Almada for information on the recruitment process for the Waimea baseyard EO3 position. Almada refused to provide any information. Andrade then asked to meet with division chief Greg Goodale (**Goodale**) to discuss the situation. He made an appointment for August 2, 2012, but was kept waiting for over an hour and had to leave to pick up his children. When he tried to reschedule the meeting, he was told that Goodale would not meet with him. He tried again, several times, but his calls were not returned. On August 27, 2012, he asked Almada for copies of his interview and performance test scores. Almada denied the request. On August 29, 2012, he was told by a United Public Workers (**UPW**) business agent that matters involving recruitment were not subject to the collective

bargaining agreement between UPW and the County.[10]  That same day, he reviewed his personnel file and saw that his annual job performance reviews, his May 12, 2011 hardship letter, the notification that he was not selected for the Waimea baseyard EO3 position, and the scores from his three driving performance tests were missing from the file.

The Department had adopted a formal, written policy concerning internal complaints (**Internal Complaint Policy**) to "provide a means for employees . . . to . . . rectify problems relating to the violation, misinterpretation or misapplication of certain personnel laws, regulations, rules or policies, while being assured freedom from coercion, discrimination, or reprisal."  On August 30, 2012, Andrade submitted an internal complaint form and letter detailing how the Department had failed to follow its own policies and guidelines for recruitment for the Waimea baseyard EO3 vacancy.  He wanted to ask about test scores, qualifications, and final decision making for the March 7, 2012 EO3 job posting.  On October 16, 2012, he met with his supervisors and a UPW shop steward as part of the internal complaint process.  One of the supervisors acknowledged that he had been aware of Andrade's August 2012 request for a meeting, but intentionally did nothing about it.  Andrade informed the supervisors that they had violated the Internal Complaint Policy. He then left the office.

On October 19, 2012, Andrade again requested a copy of his personnel file.  On October 31, 2012, he received a portion of his file.  On that day the Department also rejected his internal complaint on the grounds that the recruitment process involved the collective bargaining grievance procedure.

Andrade wanted to appeal to the merit appeals board, but the Department would not accept his appeal form.  He was told that he could only file an appeal with the merit appeals board if

---

[10]    The record does not contain a copy of the collective bargaining agreement applicable to Andrade's employment by the County.  The County did not raise a hearsay objection to Andrade's declaration testimony.

he received a letter from UPW stating that the recruitment process did not fall within the collective bargaining agreement grievance process. A UPW business agent later informed Andrade that no such letter was needed to file an appeal with the merit appeals board.

On September 17, 2012 (while his internal complaint was pending), Andrade was notified that he was the subject of an internal investigation for a confrontation with a co-worker on July 30, 2012, at the Ke'ei Transfer Station. He was later absolved of any wrongdoing.

On February 11, 2013, Andrade submitted another hardship letter asking to be considered for a transfer to the Waimea baseyard, and another internal complaint form alleging that he had been subject to unlawful discrimination and harassment by his supervisor because of his age. On February 21, 2013, Andrade received a memorandum from Almada rejecting his age discrimination complaint because he had failed to detail how he was disparately treated based on age. Almada sent another letter on March 12, 2013, repeating the rejection of his internal complaint. No mention was made of any appeal process.

On February 7, 2013, Andrade was informed by his supervisor James Vasconcellos (**Vasconcellos**) that he was being investigated for a December 8, 2012 incident involving "unsafe work conditions." On February 14, 2013, Andrade submitted an internal complaint form, claiming to have been the victim of a false report concerning the December 8, 2012 incident. Vasconcellos rejected the internal complaint as untimely, and ordered Andrade to attend an investigative interview about the December 8, 2012 incident. On March 4, 2013, Andrade sent a letter to Vasconcellos explaining why he felt his internal complaint was timely. On March 8, 2013, Vasconcellos again rejected the February 14 internal complaint as untimely and again demanded that Andrade appear for an interview about the incident involving unsafe work conditions. Andrade attended the investigative interview on April 2, 2013. On April 8, 2013,

10

Andrade submitted another internal complaint, alleging that instead of investigating the alleged incident, Vasconcellos cursed at him and called him names. On April 16, 2013, Goodale ordered Vasconcellos to appear for an investigative interview. Andrade has never been informed of the disposition of his April 8, 2013 internal complaint.

On July 24, 2013, Andrade was informed by Vasconcellos that he was the subject of possible disciplinary action relating to a scrap metal delivery on July 20, 2013. On August 6, 2013, Vasconcellos told Andrade that he (Andrade) would no longer be eligible to serve in temporary supervisory positions. On August 9, 2013, Vasconcellos ordered Andrade to appear for a disciplinary investigative interview. On August 13, 2013, Andrade contacted the Department's director (**Director**), told her he was being harassed and retaliated against by his supervisor, and asked to meet to discuss his concerns. On August 14, 2013, Andrade was suspended without pay and prohibited from being at any County work sites. His suspension letter cited three incidents: the July 20, 2013 scrap metal delivery; his alleged discrimination and harassment of a co-worker, creating a hostile work environment; and his walking off the job on August 10, 2013.

On August 26, 2013, Andrade was ordered by Almada to appear for an interview on September 3, 2013, after which he could return to work. On September 5, 2013, he returned to work and his eligibility for temporary supervisory positions was reinstated. He asked Vasconcellos for documentation but Vasconcellos refused, stating that according to Almada no written notice was necessary.

On November 6, 2013, he was notified by Vasconcellos that the scrap metal delivery incident had become a case of failing to follow instructions; that the discrimination and harassment complaint against him had become a sexual harassment/ discrimination complaint, but was being dismissed for lack of evidence; and that the charge of walking off the job was changed to leaving a work assignment and was also being dismissed for

lack of evidence. On November 20, 2013, Andrade received written notice from Almada that the investigation had been concluded, he would receive back pay for the period of time he had been suspended, he could resume his full duties, and he would resume being entitled to temporary supervisory assignments.

On November 7, 2013, Andrade was informed that he was being investigated for sick leave abuse. The disposition of the investigation was not mentioned either in Andrade's Complaint for Declaratory Relief or in Andrade's declaration.

On December 19, 2013, Andrade learned that a co-worker had been transferred to the Waimea baseyard without a vacancy having been posted. He also discovered that another recruitment for island wide positions had been available, but had not been posted and had closed two days earlier.

Vasconcellos continued to harass Andrade in the work-place on a daily basis by using harsh words, cursing, giving him the least desirable assignments, and refusing to allow him to transfer to the Waimea baseyard.

On October 23, 2014, Andrade met with temporary supervisor Dennis Gibo (**Gibo**). During that meeting, Gibo made sexually explicit, unwanted, and inappropriate statements. Andrade submitted a discrimination and harassment complaint form about the incident, and a letter to the Director describing the incident. Neither the Department nor the Director took any action in response to the complaint or the letter.

## III.

On April 24, 2015, Andrade filed a "Complaint for Declaratory Relief" (**Complaint**) against the County. The Complaint alleged the following counts: (1) deprivation of due process; (2) whistleblower liability; (3) retaliation; (4) (5) and (6) negligent training, supervision, and infliction of emotional distress; and (7) wilful and wanton misconduct. It requested a declaration — which we interpret to be a request for issuance of a mandatory injunction — requiring that the County

"accept and process" Andrade's internal complaints of August 30, 2012, February 11, 2013, March 12, 2013, April 8, 2013, and October 23, 2014, and requiring that the County allow him to appeal to the merit appeals board "even if [the] date of the initial occurrence is beyond the regulatory deadline[.]" It also sought an award of damages, attorneys' fees, costs, pre- and post-judgment interest, and other unspecified relief.

The Complaint was served on the County on July 7, 2015. On July 27, 2015, the County filed a motion to dismiss the Complaint or, in the alternative, to strike certain parts of the Complaint. Andrade's memorandum in opposition (containing his declaration) was filed on August 27, 2015. The County's reply memorandum was filed on September 1, 2015.[11] The motion was heard on September 4, 2015. The Circuit Court orally granted the motion. A written order was filed on October 1, 2015. The Judgment was filed on November 19, 2015. This appeal followed.

## IV.

Andrade contends that the Circuit Court erred by ruling that: (a) his rights under the Department's rules for internal complaint procedures were not liberty or property interests under article I, section 5 of the Hawai'i Constitution; (b) his whistleblower claim was time-barred; (c) he failed to exhaust his administrative remedies by not pursuing his claim for retaliation with the HCRC; (d) his negligence claims were barred by the exclusive remedy provisions of the Hawai'i Workers' Compensation Law; and (e) his claims for wilful and wanton conduct should be dismissed.

---

[11] The County's reply memorandum made an argument based on the statute of limitations that was not raised in the County's moving papers. Andrade objected and asked that the Circuit Court either strike the argument or allow him to submit a supplemental brief on the issue. It does not appear that the Circuit Court ruled on either the oral motion to strike or the request to submit a supplemental brief.

## A. Due Process

Count I of Andrade's Complaint alleges that the County deprived him of a liberty interest in his continued employment without due process of law. Article I, section 5 of the Hawai'i Constitution provides that no person shall be deprived of life, liberty or property without due process of law. We review questions of constitutional law under the right/wrong standard by exercising our independent judgment based on the facts of the case. Minton v. Quintal, 131 Hawai'i 167, 184, 317 P.3d 1, 18 (2013). Procedural due process claims are analyzed in two steps: first we determine whether the state has interfered with a recognized "liberty" or "property" interest and second (if there has been state interference) we determine what specific procedures are required to satisfy due process. Id. at 185, 317 P.3d at 19.

Andrade incorrectly argues that "the issue of whether employment opportunities in the public sector [are] liberty or property interest[s] was decided in Minton[.]" The plaintiffs in Minton were not public employees; they were veteran union stage workers who had been banned from city-owned venues (including the Neil S. Blaisdell Center (**NBC**) and the Waikīkī Shell amphitheater) without notice or an opportunity to be heard after the mayor became unhappy with their work at a private event at which the mayor performed. The city regularly leased those venues to promoters who would then hire union stage workers to work the shows; the ban reduced the work available to the plaintiffs by seventy-five to ninety percent. The plaintiffs contended that "finding replacement work was not possible because [the] large shows for which [their] services were required were held at the NBC and Waikiki [Waikīkī] Shell." Id. at 183, 317 P.3d at 17. In that context, the supreme court held:

> In this case, [the plaintiffs'] right to pursue their chosen
> professions as stagehands was directly and unambiguously
> interfered with by the City's ban. . . . Petitioners did not
> merely lose one position as a result of the City's ban.
> Rather, [the plaintiffs] had a history of being employed as

14

> stagehands specializing in large-scale stage productions, and <u>were categorically prohibited from working for any employer at the City's facilities, where the vast majority of large-scale productions in the city are held</u>. As a result of the City's ban, private employers . . . were prevented from freely hiring [the plaintiffs] as stagehands for their events.
>
> Because of the close connection between [the plaintiffs'] professions and the City's facilities, prohibiting [the plaintiffs] from accessing those venues effectively foreclosed their ability to take advantage of employment opportunities. The natural consequence of the City's ban was that [the plaintiffs] were <u>denied privileges that were practically necessary to pursuing their chosen occupations</u>. The City's ban seriously affected, if not destroyed, [the plaintiffs'] abilities to obtain employment in their field, and substantially reduced the value of their human capital.

<u>Minton</u> at 188, 317 P.3d at 22 (cleaned up) (underscoring added). The supreme court ruled that "[t]he adverse effect of the City's ban on [the plaintiffs'] future employment opportunities was so prevalent and comprehensive that it implicated a liberty interest under article I, section 5 of the Hawai'i Constitution." <u>Id.</u> (footnote omitted). The supreme court did not reach the question of whether the City's ban also implicated a property interest under the Hawai'i Constitution. <u>Id.</u> at 188 n.15, 317 P.3d at 22 n.15.

In this case, Andrade does not dispute that he is still employed by the County as an EO3 at the Kealakehe baseyard — the position for which he was originally hired. The Circuit Court concluded during the hearing on the County's motion to dismiss that "[Andrade] has not shown that he has a liberty or property interest" at issue in the case because he "is still employed by the county in the position that he was hired for[.]" Procedural due process protects only against a <u>deprivation</u> of property interests. <u>International Brotherhood of Electrical Workers, Local 1357 v. Hawaiian Tel. Co.</u>, 68 Haw. 316, 332, 713 P.2d 943, 956 (1986) (underscored word italicized in original). Andrade was not deprived of his employment. His ability to transfer to a different work site is not a protected liberty or property interest. <u>Cf.</u> <u>Shimose v. Hawaii Health Sys. Corp.</u>, 134 Hawai'i 479, 488 n.17, 345 P.3d 145, 154 n.17 (2015) (affirming summary

judgment in favor of Hawaii Health Systems Corp. because plaintiff "cannot establish a liberty or property interest in prospective employment at" state-run Hilo Medical Center).

Andrade also contends: "This case is not about requiring the [County] to transfer [him] or that [he] had a 'right' to a transfer, it is about the [County] denying [Andrade] his basic, fundamental due process right to appeal employment decisions that directly concern him and [that are] outside the scope of a collective bargaining agreement.[12]" (Footnote added.) The Hawai'i Supreme Court has stated:

> A property interest does not need to be "tangible" to be protected by the due process clause. Rather, a protected property interest exists in a benefit — tangible or otherwise — to which a party has "a legitimate claim of entitlement." . . .
>
> The legitimate claims of entitlement that constitute property interests are not created by the due process clause itself. Instead, they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state law — rules or understanding that secure certain benefits and that support claims of entitlement to those benefits.

In re App. of Maui Elec. Co., 141 Hawai'i 249, 260, 408 P.3d 1, 12 (2017) (cleaned up). One such "independent source" is the Hawai'i Civil Service Law, Hawaii Revised Statutes (**HRS**) Chapter 76. HRS § 76-1 (2012) provides, in relevant part:

> It is the purpose of this chapter to require each jurisdiction to establish and maintain a separately administered civil service system based on the merit principle. The merit principle is the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance. It is also the purpose of this chapter to build a career service in government, free from coercive political influences, to render impartial service to the public at all times, according to the dictates of ethics and morality and in compliance with all laws.
>
> In order to achieve these purposes, it is the declared policy of the State that the human resource program within each jurisdiction be administered in accordance with the following:

---

[12]    See note 10 above.

> (1) Equal opportunity for all in compliance with all laws prohibiting discrimination. No person shall be discriminated against in examination . . . [or] transfer . . . with respect to any position when the work may be efficiently performed by the person without hazard or danger to the health and safety of the person or others[.]

The Hawaiʻi Supreme Court has held:

> The civil service statute defines the merit principle broadly as the selection of persons based on their fitness and ability for public employment and the retention of employees based on their demonstrated appropriate conduct and productive performance. In order to achieve the broad purpose of selecting civil service employees based on fitness and ability, the statute requires, among other things, impartial selection of individuals for public service by means of competitive tests which are fair, objective, and practical. As we have explained, our civil service system embodies positive principles of public administration such as openness, merit, and independence. Openness is served through public announcement of job vacancies, clear articulation of qualifications, open application to all persons, and selection according to objective criteria.

Matter of Kuamoo, 142 Hawaiʻi 492, 496, 421 P.3d 1262, 1266 (2018) (cleaned up). Andrade is correct that as a civil service employee, he has a constitutionally protected property interest in the County's application of the merit principle in the administration of its human resources program.

Andrade contends that he wanted to appeal the rejection of his transfer applications to the County merit appeals board but the Department wrongfully rejected his appeal form. Merit appeals boards are established under HRS §§ 76-47 (2012) and 76-71 (2012) to hear appeals by certain civil service employees from actions taken by public employers under the Civil Service Law. HRS § 76-14 (2012) establishes the merit appeals boards' jurisdiction and provides, in relevant part:

> (a) The merit appeals board of each jurisdiction shall decide appeals from any action under this chapter taken by the chief executive, the director, an appointing authority, or a designee acting on behalf of one of these individuals, relating to:

> (1) Recruitment and examination[.]
>
> . . . .
>
> (b) Any person suffering legal wrong by an action under subsection (a)(1) or aggrieved by such action shall be entitled to appeal to the merit appeals board.

Under HRS § 76-14(a)(1) and (b), "any person" suffering legal wrong or aggrieved by a recruitment and examination action is entitled to appeal to the merit appeals board. Andrade is "any person." We hold that Andrade's allegation that the County wrongfully deprived him of a hearing before the merit appeals board on the issue of whether the County's recruitment and examination process for the vacant EO3 positions were consistent with the merit principle, as required by the Hawai'i Civil Service Law, stated a claim for violation of article I, section 5 of the Hawai'i Constitution. The Circuit Court erred in summarily dismissing his due process claim.[13]

### B. Whistleblower Claim

Count II of the Complaint alleges that the County violated HRS § 378-62(1)(A) (Supp. 2014), which is part of the Hawai'i Whistleblowers' Protection Act (**HWPA**). The statute provides, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public

---

[13] We emphasize that we are <u>not</u> deciding whether Andrade satisfied any procedural or other requirements for initiating a proceeding before the merit appeals board, <u>see, e.g.</u>, Rules of the Dept. of Human Resources, Hawai'i County, Title II, § 104-2, whether Andrade's claim that the County's recruitment and examination process failed to comply with the merit principle is meritorious, or any other issue that may be presented on remand. We reject Andrade's request that we rule, as a matter of law, that the County must "accept and allow [Andrade] to file his appeals to the Merit Appeals Board arising from [Andrade's] Internal Complaints even if [the] date of the initial occurrence is beyond the regulatory deadline[.]"

> body, verbally or in writing, a violation or a
> suspected violation of:
>
> (A)   A law, rule, ordinance, or regulation, adopted
>       pursuant to law of this State, a political
>       subdivision of this State, or the United
>       States[.]

The Circuit Court ruled that Andrade's claim was time-barred.
Andrade contends that the County's statute of limitations defense
was improperly raised for the first time in the County's reply
memorandum.   We address the merits because our review is de novo
and because Andrade has had the opportunity to address the issue
in his opening and reply briefs.

HRS § 378-63 (1993 & Supp. 2014) provides the
limitation period applicable to claims under the HWPA:

> (a)   A person who alleges a violation of this part
> may bring a civil action for appropriate injunctive relief,
> or actual damages, or both within two years after the
> occurrence of the alleged violation of this part.
>
> . . . .
>
> (c)   As used in subsection (a), "damages" means
> damages for injury or loss caused by each violation of this
> part, including reasonable attorney fees.

Andrade's Complaint initiating this lawsuit was filed on
April 24, 2015.   He argues that his HWPA claim is not time-barred
because he engaged in protected activity on August 13, 2013, and
on October 23, 2014, within two years before he filed his
Complaint.   The statutory limitation period is not triggered by
an employee's engaging in protected activity; it is triggered by
the employer's violation — i.e., adverse action taken by the
employer because of the employee's protected activity.   See Lalau
v. City & Cty. of Honolulu, 938 F.Supp.2d 1000, 1021 (D. Haw.
2013).

Andrade's Complaint alleges the following adverse
actions:

> a.   Keeping any knowledge of open positions at the
> Waimea baseyard that [Andrade] would qualify and apply for
> from [Andrade]; and/or

> b. Rejecting any application or letter from [Andrade] requesting a transfer to the Waimea baseyard, that followed prior department procedures; and/or
>
> c. Selecting other employees for positions at the Waimea baseyard; and/or
>
> d. Intentionally and deliberately refus[ing] to process any Internal Complaints regarding the unlawful recruitments[.]

The Complaint alleges that Andrade was informed that a co-worker had been able to transfer to the Waimea baseyard without the vacancy having been posted, and discovered that another recruitment for an island-wide position had been available but was not posted and had been closed, on December 19, 2013. The Complaint contains allegations of other adverse actions allegedly taken within two years before April 24, 2015 – Vasconcellos "continued to harass [Andrade] on a daily basis in the workplace" and the County's alleged failure to investigate or respond to Andrade's County Discrimination and Harassment Complaint Form submitted on October 23, 2014. Andrade's declaration also contains allegations of adverse actions taken against him after April 24, 2013. The Circuit Court erred in dismissing Andrade's HWPA claim based upon the two-year statutory limitation period. In light of our ruling we need not address at this time Andrade's additional argument that the continuing violation exception applies to his HWPA claim.

## C. Failure to Exhaust Administrative Remedies

Count III of the Complaint alleges that the County retaliated against Andrade in violation of HRS § 378-2 (Supp. 2014) by discriminating against him based upon his age and gender. The statute provides, in relevant part:

> (a) It shall be an unlawful discriminatory practice:
>
> (1) Because of . . . sex including gender identity or expression, . . . [or] age . . . :
>
> (A) For any employer to . . . discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]

20

. . . .

>     (2)     For any employer . . . to discharge, expel, or
>             otherwise discriminate against any individual
>             because the individual has opposed any practice
>             forbidden by this part or has filed a complaint,
>             testified, or assisted in any proceeding
>             respecting the discriminatory practices
>             prohibited under this part[.]

The HCRC has primary jurisdiction over alleged violations of HRS § 378-2.  HRS §§ 378-4 (Supp. 2014); 368-11(a) (1993 & Supp. 2014).  The Circuit Court correctly ruled that Andrade failed to exhaust his administrative remedies because Andrade did not initiate a proceeding before the HCRC and did not obtain a right to sue letter.

Andrade argues, for the first time on appeal, that Count III was actually based on the County's violation of HRS § 378-70 (Supp. 2014) (even though the statute is not mentioned in Andrade's Complaint, as was HRS § 378-2).  We decline to address this argument because it was not raised before the Circuit Court.  HRS § 641-2 (Supp. 2014) ("The appellate court . . . need not consider a point that was not presented in the trial court in an appropriate manner."); Association of Apartment Owners of Wailea Elua v. Wailea Resorts Co., 100 Hawai'i 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.").

Andrade also argues, for the first time in his reply brief, that his claim of sexual harassment is exempt from HCRC jurisdiction under HRS § 378-3(10) (Supp. 2014).  Not only was this argument not made below, it also directly contradicts Andrade's memorandum in opposition to the County's motion to dismiss, which stated:

>             The Complaint does not allege age discrimination,
>     sexual harassment or hostile work environment claims.

(Underscoring added.)  The Circuit Court's dismissal of Count III is affirmed.

D.     **Exclusive Remedy**

Counts IV, V, and VI of the Complaint allege, respectively, negligent training, negligent supervision, and negligent infliction of emotional distress.  Each of these counts alleges some variation of a claim that Andrade lost wages and suffered "mental and emotional distress, memory loss, anguish and humiliation," and "severe emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of weight, loss of sleep, loss of appetite, loss of enjoyment of life, and other nonpecuniary losses," because the County failed to properly train or supervise the employees (i.e., Almada, Vasconcellos, and Gibo) who "failed to follow personnel laws and policies concerning recruitment and Internal Complaints" and who harassed, and discriminated and retaliated against, Andrade.  None of the County employees are named as defendants.

The Circuit Court ruled that the Hawai'i Workers' Compensation Law provided the exclusive remedy for Andrade's alleged injuries, and dismissed all three counts.  HRS § 386-5 (1993) provides:

> The rights and remedies herein granted to an employee
> . . . on account of a <u>work injury</u> suffered by the employee
> shall exclude all other liability of the employer to the
> employee, . . . at common law or otherwise, on account of
> the injury, except for sexual harassment or sexual assault
> and infliction of emotional distress or invasion of privacy
> related thereto, in which case a civil action may also be
> brought.[14]

(Underscoring and footnote added.)  "Work injury" means a personal injury suffered under the conditions specified in HRS § 386-3 (Supp. 2014).  HRS § 386-1 (1993 & Supp. 2014). HRS § 386-3 provides, in relevant part:

> (a) If an employee suffers personal injury . . . by
> accident arising out of and in the course of the employment

---

14     Andrade's memorandum in opposition to the County's motion to dismiss states, "The Complaint does not allege . . . sexual harassment . . . claims."

> . . . the employee's employer . . . shall pay compensation
> to the employee . . . as provided in this chapter.

While HRS Chapter 386 does not define "personal injury," the statute contemplates compensation for physical and mental injuries. Nakamoto v. Kawauchi, 142 Hawaiʻi 259, 270, 418 P.3d 600, 611 (2018). It does not contemplate harm to reputation. Id. at 271, 418 P.3d at 612. In this case the damages sought under Counts IV, V, and VI are based upon mental and emotional injuries allegedly arising out of and in the course of his employment by the County. Because those claims are being made against the County, they are barred by the exclusive remedy provisions of the Workers' Compensation Law. The Circuit Court's dismissal of Counts IV, V, and VI is affirmed.

### E.    Wilful and Wanton Misconduct

Count VII of the Complaint alleges that the County's employees "were motivated by an actual intent to cause injury to" Andrade. It is not clear what cause of action Count VII is trying to assert because the Complaint does not pray for an award of punitive damages; even if it did, "a claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action." Ross v. Stouffer Hotel Co. (Hawaiʻi), 76 Hawaiʻi 454, 466, 879 P.2d 1037, 1049 (1994) (citation omitted).

If Count VII was intended to state a claim against Andrade's co-employees under the HRS § 386-8 (1993) exception[15] to the § 386-5 exclusivity provision, the co-employees named in the text of Andrade's Complaint should have been named as defendants. The cases upon which Andrade relies all involved co-employees who were individually named as either defendants,

---

[15]    At the time Andrade filed his Complaint HRS § 386-8 provided, in relevant part:

> Another employee of the same employer shall not be
> relieved of his liability as a third party, if the personal
> injury is caused by his wilful and wanton misconduct.

Iddings v. Mee-Lee, 82 Hawai'i 1, 919 P.2d 263 (1996), Yang v. Abercrombie & Fitch Stores, 128 Hawai'i 173, 284 P.3d 946 (App. 2012), overruled in part by Nakamoto, 142 Hawai'i at 270, 418 P.3d at 611, or third-party defendants, Hirasa v. Burtner, 68 Haw. 22, 702 P.2d 772 (1985).

Because a claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action, and because Andrade did not name Almada, Vasconcellos, or Gibo as defendants, the Circuit Court's dismissal of Count VII is affirmed.

## V.

For the foregoing reasons, we vacate the Judgment as to Counts I and II of the Complaint, affirm the Judgment as to Counts III, IV, V, VI, and VII of the Complaint, and remand for further proceedings consistent with this opinion.

On the briefs:
Ted H. S. Hong,
for Plaintiff-Appellant.

Lerisa L. Heroldt,
Lauren L. Martin,
for Defendant-Appellee.

24